# IN THE COURT OF APPEALS OF IOWA

No. 19-0411
Filed June 5, 2019

**IN THE INTEREST OF A.T. and A.T.,**
**Minor Children,**

**J.T., Father,**
     Appellant.
_____


Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld, District Associate Judge.


A father appeals the termination of his parental rights.  **AFFIRMED.**



Patricia J. Meier of Nidey Erdahl Fisher Pilkington & Meier, PLC, Cedar Rapids, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Zachary P. Crowdes, Cedar Rapids, attorney and guardian ad litem for minor children.


Considered by Vogel, C.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

A father appeals the juvenile court order terminating his parental rights. He claims clear and convincing evidence shows termination would be detrimental to the children due to the closeness of the parent-child bonds. We find termination of the father's parental rights is in the children's best interests. We affirm.

## I.    Background Facts & Proceedings

J.T., father, and J.K., mother, are the parents of two children, A.T. and A.D.T., born in 2015 and 2016. The Iowa Department of Human Services (DHS) has been involved with the family since the birth of A.T. due to the child testing positive for marijuana at birth, substance abuse by both parents, the father's probation violations, and domestic violence between the parents.

On February 4, 2016, a petition to declare A.T. a child in need of assistance (CINA) was filed due to concerns of domestic violence in the child's presence, marijuana use in the home, and supervision concerns. A.T. was adjudicated CINA on March 29, but remained in her mother's care after the mother assured DHS she was not using drugs anymore. DHS agreed to visitation for the father. The mother tested positive for marijuana. A.T. was removed from the home on June 16 after the mother's drug test came back positive and the father failed to appear for a probation appointment. Testing on the child's hair came back positive for ingestion and exposure to marijuana. In September, the father was arrested for felony possession of a controlled substance.[1] The father participated in substance-abuse treatment while incarcerated.

---

[1] The father had also been arrested for possession of a controlled substance in December 2015, after the older child's birth.

A.D.T. was born in late 2016 and tested negative for controlled substances. The father was in jail at the time of A.D.T.'s birth. A CINA petition was filed for the younger child on January 3, 2017, due to the parents' lack of compliance on the older child's case. The lack of compliance included the father's arrest for probation violations on multiple drug charges. At a January 24 permanency hearing for the older child, the court granted additional time to work toward reunification. The younger child was adjudicated CINA on February 6, but remained in the mother's care. The older child was returned to the parents' care on June 27, as the mother was addressing her mental-health and substance-abuse issues. The father had been released from jail and was sharing care of the children with the mother.

In September 2017, the mother and father were living together with the children at the home of the paternal grandmother. The parents only occasionally complied with required weekly drug testing. When he complied with testing for his probation, the father's tests often came back positive for marijuana. The parents did not make themselves available for all the weekly face-to-face contacts with service providers as required.

Following a January 2018 request to close the case, the court ordered hair tests on the children and set a hearing. Both children's tests came back positive for ingestion of marijuana. In February, DHS also discovered the father had not been compliant with his probation and had not been attending his mental-health appointments. He admitted to daily marijuana use since October 2017.

On March 5, 2018, DHS received test results for the parents; both tested positive for methamphetamine and marijuana. The children also tested positive for methamphetamine and marijuana. The children were removed from the home

and placed in foster care. The parents were evicted from their home at the end of March, and the father was arrested.

The father has used marijuana since he was fourteen years old. He used methamphetamine occasionally. He has a history of obtaining substance-abuse and mental-health evaluations and treatment, then failing to follow through with the recommendations when in the community.

The father has been arrested and incarcerated multiple times throughout the children's young lives. He has been on probation since 2014. The father was in jail from the end of March 2018 through the termination hearing at the end of December. While in jail, he had consistent visitation with the children. The father was sober through his incarceration. He attended mental-health treatment regularly through the jail. However, he repeatedly goes back to drugs or alcohol when in the community and stops attending mental-health treatment. When released to participate in drug court in December, two weeks prior to the termination hearing, he violated his probation the day after his release by drinking alcohol and was placed back in jail. He testified he drank the alcohol to "take the edge off."

The termination hearing was held on December 28, 2018. The court heard testimony from the mother, the father, the DHS worker, the father's therapist, and the family services worker supervising his visits. At trial, the father requested additional time for him to be released and get set up to take care of the children.

On February 27, 2019, the court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(f), (h), and (*l*) (2018).[2]

## II. Standard of Review

We review termination-of-parental-rights cases de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "There must be clear and convincing evidence of the grounds for termination of parental rights." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Clear and convincing evidence means there are "no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence." *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017) (citation omitted). The paramount concern in termination proceedings is the best interests of the children. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III. Analysis

The juvenile court terminated the father's rights to A.T. under section 232.116(1)(f) and (*l*), and to A.D.T. under paragraphs (h) and (*l*). We note A.T. was not yet four years old at the time of the termination hearing, and therefore the State's petition and the juvenile court erred in using paragraph (f) instead of (h). However, on appeal the father concedes the statutory requirements for termination have been met and only contests whether termination of his parental rights is in the best interests of the children. He testified he would be ready for the children to return to his care in three to six months.

The court found the father was not available to parent the children due to his incarceration and expressed concern for the father's ability to maintain sobriety

---

[2] The court also terminated the mother's parental rights. She does not appeal.

and attend to his mental health while in the community. In particular, the court was concerned the father would not comply with the rules of probation when his December release resulted in a violation the next day. The court found the foster and potential adoptive placement offered the best placement for the long-term nurturing and growth of the children.

A parent's rights need not be terminated if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c).

> In deciding what is in the child's best interests, we follow the framework established in section 232.116(2), giving "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."

*In re B.T.*, 894 N.W.2d 29, 33 (Iowa Ct. App. 2017). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (citation omitted). A parent's past performance "may be indicative of the quality of future care the parent is capable of providing." *J.E.*, 723 N.W.2d at 798 (citation omitted).

The record shows the father was arrested for two separate offenses and sustained multiple probation violations during the course of his young children's lives. He missed the birth of the younger child due to being in jail. He has been through substance-abuse treatment while incarcerated and relapsed after release. He has spent more than half of the younger child's life in jail. While he seemed to be making progress on his mental-health and was sober for an extended period

during his last incarceration, upon release to enter drug court he almost immediately violated his probation and conditions of his housing by drinking alcohol.

The children have been with a foster family since the beginning of March 2018. That family wants to adopt the children. This is the second foster placement for the older child, who was removed for a year as an infant, then was placed with the parents for nine months before the second removal. While everyone agrees the children have a good bond with the father, the father parents well under supervision, and they clearly love each other, the children are also bonded to the foster family. The father had over three years to demonstrate his ability to care for the children, but has been unable to maintain sobriety outside of jail. Through his actions, he has not shown he would be in a place to care for the children within another six months. Based on the record before us, we find it is in the children's best interests to terminate the father's parental rights.

**AFFIRMED.**